We're here today for oral arguments. We're going to begin with Appeal 23-2756 Indiana Green Party et al. v. Diego Morales and we'll begin with oral argument. Mr. Hall from you. Mr. Hall Good morning. May it please the Court, Oliver Hall on behalf of Plaintiff Appellants. This case involves a constitutional challenge to Indiana's ballot access requirements for independent and minor party candidates. The reasons for doing so are so clear that this Court can and should reverse without reaching the merits. First, the District Court expressly declined to conduct the fact-intensive analysis required under the Anderson-Burdick framework in direct violation of Supreme Court and Seventh Circuit precedent. Second, the District Court failed to address plaintiffs' as-applied-in-combination claim, once again in direct violation of Supreme Court and Seventh Circuit precedent. And third, the District Court granted summary judgment for the Secretary despite the Secretary's clear failure to carry his evidentiary burden. The Secretary asserted no material facts, admitted plaintiffs' material facts, submitted almost no admissible evidence, and did not In fact, the Secretary almost completely failed to address the evidentiary record in this case at all. As a result, the Secretary failed to provide any factual basis on which the District Court could rule as a matter of law in his favor. Mr. Hall, could I ask you, can you point us to any cases from the Supreme Court or this less than 5% of the relevant electorate? I'm not sure that the Seventh Circuit has, Your Honor, but certainly other District Courts can and do on a regular basis. We are a Circuit Court, not a District Court. Can you point us to, I'm not aware of any Supreme Court case or case of ours. Can you point us to other circuits that have struck down signature requirements above or rather below 5%? Yes, Your Honor, and pardon me for misspeaking. The Sixth Circuit recently struck down Michigan's signature requirement that actually amounted to less than 1% of the prior vote in the general election. That case was Gravelin v. Benson, cited in our briefs. Likewise, the Eleventh Circuit struck down a 1% signature requirement in Georgia. And the reason these courts hold these statutes unconstitutional, notwithstanding Supreme Court cases upholding higher signature requirements, is that, as I alluded to at the beginning of this argument, these cases expressly forbids courts from using prior cases as so-called litmus tests to uphold ... So when is it a litmus test and when is it a precedent? How do we tell the difference? The difference, Your Honor, is when a court, as the District Court did here, cites prior cases without addressing the facts of those cases and without addressing the facts before it or the evidence before it. That's exactly what the District Court did here. In fact, this case is quite similar, if not indistinguishable, from Gill v. Scholes, which this court decided not very long ago. In that case, too ... Excuse me, pardon me for interrupting you. Any Anderson-Burdick fact-intensive problems with either that Sixth or Eleventh Circuit opinions that you're referencing? No, Your Honor. In those cases, the District Court struck down the requirements that were being challenged and the Courts of Appeals upheld them. Thank you. You're welcome. The point about the Anderson-Burdick analysis is that it requires an intensive analysis of the facts. As this court has recognized, statutory schemes vary widely among states. Not only that, but the factual bases for bringing constitutional challenges vary greatly depending on the legal theories and the facts from which they arise. For example, in this case, it is undisputed, it is admitted by the Secretary, that Indiana's ballot access requirements are so burdensome that volunteer petition drives cannot succeed. It is also admitted that the ... How is that? I've got to say, I'm mystified by your argument that in essence because your clients either have not tried or have not succeeded to comply with these requirements that we need to strike them down. Your Honor, it's not ... The Supreme Court has long said that we expect hard work, volunteers, cooperative efforts. That's how you test whether a party or a candidate has the so-called reasonable modicum of support. Well, Your Honor, the evidence in this case does not pertain only to the plaintiffs. In fact, plaintiffs have submitted a comprehensive evidentiary record dating back to several decades to, in fact, prior to the enactment of the requirements challenged now. And what that evidentiary record shows is that no candidate, no party, has ever completed a statewide petition drive except by spending substantial sums of money to do it. So what? Well, it shows ... For example, in Storer v. Brown, the Supreme Court stated that past experience is one of the most important indicators of whether a law ... Upheld a 300,000 signature requirement that had to be collected in 24 days, right? No, Your Honor, it did not. In fact, in that case, the ... Am I confusing it with something else? No, the Secretary alleged that the Supreme ... I believe the Secretary stated that the Supreme Court upheld that requirement. In fact, that case was remanded to the District Court for a determination based on further evidence of whether that requirement would be too onerous. Ah, but that was a 5% requirement and you had to swear that you weren't ... You hadn't participated in a primary, right? So it was a much more stringent requirement than Indiana imposes now. And the Supreme Court upheld that. Well, a few distinguishing factors about Storer. For one thing, that was decided before Anderson Burdick and didn't apply the Anderson Burdick standard that is now mandatory. Secondly ... You're not saying that it was overruled by those cases? Not overruled, but it is now informed by the analytic framework that the Supreme Court has developed in subsequent cases. Furthermore, although that case was remanded to the District Court, it's noteworthy that the dissent ... I understand it's the dissent, but the dissent cogently pointed out that the available facts and evidence were sufficient to demonstrate that that challenge requirement was in fact unconstitutionally burdensome. And on remand, the California legislature subsequently reduced the signature requirement by four-fifths. Let me come at this from a different angle. How does one show reasonable diligence? That's one of the phrases we see in a lot of this case law. How do you show that a party or an organization is unable to gain ballot access when ... with a reasonable modicum of support? We don't just ... You don't just get on the ballot for trying hard, right? Your Honor, there's no definitive statement of what a reasonably diligent candidate does or must do in order to demonstrate diligence. That's why these cases require fact-intensive analysis. But, for example, in Krislov v. Redenauer, this Court recognized that ballot access requirements cannot be considered minimally burdensome when they require a great deal of time, money, and resources. How do you square that with the Supreme Court's decision and opinion in the American Party of Texas, which made the point that this is politics. It requires hard work, money, energy, volunteers. That's certainly true. It remains true today. It's not a definitive statement about what a state may constitutionally require of a candidate or party seeking ballot access. No doubt, all of this requires hard work and sacrifice. But the evidence in this case demonstrates that candidates and parties have absolutely exercised diligence. Where does it show that? Well, for example, we have affidavits from the Green Party, Jill Stein, Howie Hawkins, Ralph Nader. Ralph Nader came in third in the presidential election in three consecutive cycles, yet Indiana is one of only three states where he never made it onto the ballot. How hard did he try? What I saw in your affidavits was a lot of minor parties, new parties, independent candidates saying, we've looked at this and we don't want to try. Your Honor, what you also saw is a history in which the only candidates or parties who complied with these requirements had to spend a lot of money to do it. The last candidate who did it was Patrick Buchanan in 2000, 23 years ago, and it cost $350,000. The only candidate to do it before that was the billionaire Ross Perot in 1996. We don't know exactly how much he spent, but he spent $12 million on ballot access nationwide, and the evidence shows from his campaign manager that a substantial portion of that money was dedicated to Indiana. So did he contract all this out, the signatures? No. In fact, Buchanan and Perot tried to rely on in-house petitioners because that's a much more successful way to go and safe. But in Indiana, they found that impossible, and so it was necessary to hire contractors. Did you want to reserve the remainder of your time? I would, Your Honor. Thank you, unless the panel has any further questions. Thank you. The next witness of the state, Kyle Hunter. Thank you, Mr. Hunter. May it please the Court. Indiana's election laws, individually and collectively, are constitutional because they place only reasonable, nondiscriminatory restrictions on voters and candidates' rights of political association. These reasonable restrictions are justified by Indiana's well-established interests in regulating elections. This Court in Hall found Indiana's signature requirement this year, around 37,000, to be, quote, modest, and, quote, not a lot to get. Indiana's June 30th deadline for filing signature petitions is also well within constitutional bounds, especially given the six months prior to file signatures, and even longer to collect them. And Indiana's county verification provision is similar to other administrative requirements, like notarization, that this Court has found to be reasonable restrictions and not severe burdens. Mr. Hunter, if you could move to this Anderson-Burdick question. You deal with the final argument in your brief. What about Gill and the requirement for Anderson-Burdick fact-intensive analysis, and what's your argument that it was done here? Certainly. So, Gill, the problem in Gill was that the Court relied exclusively on TRIP, which was a case that the Court found that they were factually distinguishable, and that relying exclusively on that case that it had done previous, that was a similar law, exclusively on that case was inappropriate and not doing the proper burden. How does that differ from the District Court's reliance here on Hall? Certainly. And the District Court didn't rely exclusively on Hall. And actually, if you look at the District Court's order denying the state's motion to dismiss, that's what the state asked them to do in the motion to dismiss, to rely exclusively on Hall. And the Court said, I'm not going to do that. I'm going to consider the specific facts, the specific alleged burdens, and put them in the panoply of case law that we have. And we have extensive case law, and this is well within the case law. And the Court itself pointed to, in the District Court's order, it cites Norman, Redmauer, Hall, TRIP, Ginnis, Storer, American Party of Texas, all of these cases to create this idea of precedent that places this case far below other requirements in other states that in pages 6 and 7 of the District Court's order, it discusses the exact burdens alleged, and then it places it within these other cases. And if we look at these other cases cited by the District Court, we see that the requirements are clearly within. It cites to Ginnis where 5% of the registered voters of the last election had to be collected in 180 days, and the deadline was the second Wednesday in June. Well, so if that test was applied to Indiana, a petitioner would have to secure 234,000 approximately signatures in 6 months, and even sooner than we require them. Mr. Hunter, what are the legitimate state regulatory interests upon which you rely in this case? Could you articulate those? Certainly. So in regulating elections, requiring a significant modicum of support is one of the main requirements. Allocating the state's limited resources, we Well, there are no state limited resources used. Are there for these entry candidates? What state resources are used? The state resources for running the primary and general elections, the state resources for certifying registered voters on petitions. Other interests include avoiding voter confusion by overcrowding ballots, and requiring, again, requiring the modicum of support that's How much of a state interest is that in requiring a modicum of support? I mean, really, when you get down to it, isn't democracy, the upstart, is supposed to have a right to make a little noise? What does the government's interest in suppressing? It's been, this court and the U.S. Supreme Court have held that that is a legitimate state interest, but in particular, the reason is to prevent voter confusion by overcrowding ballots. It's kind of patronizing on the part of the state, isn't it? Well, we look at examples, the Supreme Court cited examples like in Florida in 2000, where a large number of candidates presented significant problems. Ballots that are long have well been understood to be confusing to voters, and especially in the general election, as opposed to the primary elections, where in a primary election, a large list of candidates would all have similar positions, especially if they were- I guess what I'm, and I'd like your reaction to this is, you read these cases, and you hear time and time again, as these legitimate state interests articulated, but you don't get a great deal of discussion about them, and certainly you haven't presented, have you in this case, any really fresh information as to why today in Indiana these are legitimate state interests, which I can walk down the streets of South Bend, Indiana today, and all I hear around me is, we need fresh blood, we need fresh blood, people desperate to have new people in the process, and you know what you're basically saying here is, no, let it rest. That's a legitimate government interest, to keep the yin's in. I certainly understand, and this, the U.S. Supreme Court has said that the state doesn't need to suffer damage to the process before it requires that modicum of support or before it requires, before it prevents overcrowding ballots, but ultimately we see in Indiana that a third party has gained access to the ballot. The Libertarian Party has had success in the past 20 years of gaining access to the ballot, permanent access to the ballot, as long as they maintain their requirement, but also we see in the last gubernatorial race, the Libertarian got over 10%, they got 11.5%, which is closer to the Democrat than the Democrat was to the Republican in that case, so we see success of a third party in Indiana. Tell me about this write-in provision. Does the candidate have to declare that he is available, he or she is available as a write-in? Yes. What is the reason for that? Why can't a group of voters in a particular county or a particular part of the state of Indiana just decide we're going to get together and write in this guy's name, period? I think the requirement of having a write-in candidate sign a certificate is that they're willing to be a candidate. They'll have a chance to declare that when they decide whether to accept the office or not. My understanding is that that particular provision is not being challenged here, but that kind of write-in provision and even not having that kind of write-in provision in Burdick was found to be constitutional. But here, this case is different from Hall because in the Hall case, where Indiana's statutes were found to be constitutional, there was no write-in provision. Here, there is a write-in provision. When you're talking about the Anderson Burdick test, you talk about the actual right that is being burdened. I think that's significant here because the right to political association is furthered by the ability to have a write-in vote. But more particularly, the kind of burdens, especially the kind of ancillary burdens in other cases that have been found to be unconstitutional are those that infringe on that core right to interact with people. The Krislov case, which the other side cites, the reason that was found unconstitutional was because it prevented signature collectors that weren't registered in the state from voting. It was that interference with the actual core speech process that was found to be problematic. And so, none of the requirements by Indiana restrict a candidate or party's ability to go out and interact with the voters of Indiana. Of course, the argument on the other side is that it's not any one of these requirements, but it's the totality of these requirements that creates the problem, right? Certainly, and what we see, this court in Lee had a problem with Illinois moving their requirement from 5% to 10% and adding a bunch of different, a large number of different restrictions on the ballot. They had to file their signatures almost a year early in December. And the problem that the court had, the history that it analyzed was that almost immediately after that, there was a significant drop in the candidates that qualified. And here, we have something different. More than a decade later, there are candidates, there have been five candidates since Hall that have qualified for the statewide ballot in Indiana. And over a dozen, this is in the record, over a dozen candidates for legislative and local offices have qualified under Indiana's statute. And so, we didn't see a drop right after it was filed. In fact, almost 16 years after, we had Pat Buchanan that qualified for the ballot. So, the history itself shows that reasonably diligent candidates could appear. If I may, Indiana at one time had a lower percentage requirement and it upped the percentage to 2%. Do we know why? I mean, you know, the problem is in Indiana, there's no legislative history. You just can't find out why people do things. But is there any, was there a problem with the lower percentage? Any justification for raising it? Like you said, there is no legislative history and there's no reason suggested in the legislation itself. And the U.S. Supreme Court has found that just because there's a lower requirement in a state or in previous, in history, it doesn't require strict scrutiny or doesn't make it a severe burden. But we do see, like I said, the history shows that reasonably diligent candidates can succeed in Indiana. And the Green Party's lack of success in a notably conservative, pro-business state like Indiana is not surprising, nor is it an indication that Indiana's laws impose a severe burden. In fact, in Monroe, the U.S. Supreme Court said, states are not burdened with a constitutional imperative to reduce voter apathy or to handicap an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot. And again, in Timmins, the court talked about the Constitution does not require states to allow fusion candidates or proportional representation elections or public financing of elections just because it would make it easier for minor parties to get on the candidate. You know, we're stuck with, from your perspective, we're stuck with the Supreme Court's articulation of these legitimate, so-called legitimate government interests, and maybe that has to become the rule of decision in this case. But why hasn't the time come maybe to suggest at least to the Supreme Court that they need to re-examine these legitimate government interests and see if they're really legitimate government interests? Certainly, they have no basis in the original intent of the Constitution, right? You can't find anybody worried about this when the Constitution was put together. I think that the reason the U.S. Supreme Court doesn't need to re-examine the precedent on this is because systems like Indiana show that it's working. Like I said, the Libertarian Party itself has seen recent success, and a party like the Libertarian Party that appeals to Hoosier voters will be able to gain access, as they did. And as you look back at the history of the Libertarian Party, at first they tried and got on the ballot, and then they couldn't stay on the ballot, and then they succeeded again and they stayed on the ballot, and they have been on the ballot since. And like I said, we see in recent elections the Libertarian Party for Secretary of State got over 5.5% of the vote, and the candidate for the gubernatorial candidate got 11.5%. So essentially, Indiana is a three-party state in that regard. Mr. Hunter, with the indulgence of my colleagues, I want to ask you a couple of quick questions. Yes. On page 25 of your brief concerning the submitting of petitions to multiple counties, you seem to suggest that the same petition sheet of paper can be submitted to multiple counties? Or do they take Xeroxes? I'm not sure what you're talking about there. So wet signatures have to be submitted to each county. And that can be done either in person or by mail. And then if a petition page contains more than one vote, there is a provision that allows a candidate to go back and get that certified copy and then take it to a different county. So if there are multiple counties... Okay. Okay. Then could I ask you also about what you think the state interest is that's served by distinguishing between independent candidates and minor parties with respect to ballot retention? The Libertarian Party makes more than 2% in the Secretary of State's race. They're on the ballot for the future. But an independent candidate, even somebody who gets 10%, 15%, 20% of the vote, can't run again without going through the whole process again, right? That is correct. What interest is served by that difference? The state's interest there is... The state's interest is the promotion of candidates through parties. And an independent candidate that wins an election. So there have been no cases that have found that a 2%, let alone a 5% or a 20% requirement to stay on the ballot is unconstitutional. But any candidate that could win an election, actually win an election, could certainly, even if it's an independent candidate, if they can't get 2% of the vote after they've won more than 50% of the vote or more than 30% of the vote, if they can't get that 2% to go back on the ballot, then there seems to be a problem with the candidate and not with the system itself. Okay. Thank you. Mr. Hunter, a final question. The challenged provisions included the signature requirement, the petitioning procedure, the filing deadline, and the vote test. The district court's opinion seems to deal with the petition requirement, not the other challenge provisions. Does that present a problem here? It does mention the other provisions somewhat. It mentions the deadline. It mentions these ancillary, what are considered these ancillary burdens that are like the signature. It does talk about all of them in the facts, but in the analysis it lumps them together and talks about them and compares them to the notarization requirement that has been found constitutional in TRIP and American Party of Texas. So the district court did consider those specifically in the facts and then lumped them together in its discussion of in its analysis comparing it to other cases. Thank you. Thank you, Mr. Hunter. Mr. Platt, we'll now move to you. If you could begin. Mr. Hall, I apologize. We'll move to you. Mr. Hall, you could please begin with that last question I had with regard to four challenged provisions, but the district court summary judgment opinion seemingly dealing with just the petitioning procedure. Of course, it's a major problem, Your Honor. It shows how defective the district court's opinion is. The district court did not even address the gravamen of plaintiff's complaint here and the central claim in this case, which is that these provisions are unconstitutional as applied in combination. In Nader v. Keith, in Lee v. Keith, this court has repeatedly recognized that district courts are required to address the combined effect of challenged provisions. This goes back to the Supreme Court's decision in Stora v. Brown in which the court said a number of facially valid provisions may operate in tandem to produce unconstitutional burdens. That's the theory of this case, and it wasn't even addressed in the lower court, nor were the facts and evidence supporting that claim even addressed in the lower court. So when my colleague suggests to this court that the challenged provisions are well within the bounds of what has been held constitutional, that's simply unsupported by the record and, of course, contradicted by the evidence in the record. But the district court didn't address that question in the first instance, which is why my colleague is able to stand here today and say, oh, this is well within the bounds of what's been accepted by precedent.  It did not address the state interests. It did not make any determination as to whether the state interests are sufficient to justify the burdens. It did not... Mr. Hall, what cases do you think are closest in terms of factual burdens that were struck down? Well, the cases, Your Honor, that I mentioned earlier, Gravelin and Green Party of Georgia, are analogous in some sense in that in both cases the district courts and the courts of appeals relied on evidence of a financial burden, the cost of complying with these provisions to support their finding of a severe burden. Okay, but nothing from this court or the Supreme Court that you think is comparable? Sure. Also in this court, Krislov v. Redenauer, this court did say that provisions that require a lot of time, money, and resources to comply with... What does that mean? A lot of time, money, and resources? Yes. Well, I'm simply quoting the court there, Your Honor. I understand and I appreciate your respect for the court, but what guidance does that provide? I think it provides general guidance in the sense that we're talking about election laws regulating access to the political process, and so when it comes to a financial burden, courts are very sensitive to the fact that these impose constitutional burdens unlike other burdens. So, for example, in Bullock v. Carter and Lubin v. Panish, the Supreme Court struck down filing fees that were mandatory on candidates seeking access to the primary election ballot. Now, those cases, of course, are somewhat distinguishable in that the filing fees were statutorily mandated. As we have argued here, the record is uncontested that candidates do not comply with the challenge provisions without spending substantial sums of money. No candidate has complied in 23 years and counting, and before that, the only candidates who did spent lots of money. If the court is wondering what lots of money means in this case, it means $350,000 back in 2000 and a sum similar to that when Ross Perot ran in 1996. These raise serious constitutional questions. The evidence supporting this claim is totally uncontested. Not only uncontested, admitted by the other party. How much do you think a party should be expected to spend? Well, Supreme Court precedent suggests that they should not be expected to spend anything, and that's why the Supreme Court struck down the filing fees. I'm not talking about filing fees. I'm talking about actually organizing voters who support the party's platforms and candidates. Well, Your Honor, I do mean to respond to your question, but the point about Bullock and Lubin is that those filing fees were struck down because the court said the state cannot require these parties to hold primary elections and then force them to pay for them, which is what Indiana is doing when it requires independents and minor parties to follow antiquated, inefficient, obsolete procedures that are over 100 years old and the evidence shows woefully inadequate to serve the purpose that the state has put upon them, which is to demonstrate a modicum of support. Just one more question, and that is, what do you think the relief should look like here? I understand you don't like the requirements that are in place now. Should there be none, what do you think would pass muster? First, Your Honor, I think this court should reverse and remand for the district court to do the Anderson-Burdick analysis in the first instance. I think you're specifically asking about remedy. Yes. Remedy. Typically, in these cases, when a statute… I'm asking you. I'm sorry. What I believe should happen here is the court should declare this statutory scheme unconstitutional as applied in combination and leave it to the legislature in the first instance to devise a remedy. With what guidance? Well, the legislature actually has unfettered discretion. It's not unfettered if we're holding things unconstitutional. What guidance would you provide the legislature? Part of the guidance… What does the new system look like? Part of the guidance should be that whatever the legislature determines would be an appropriate remedy. It cannot guarantee one set of parties, the major parties, automatic ballot access at taxpayer expense while imposing these insurmountable financial burdens on all others. So you'd like to see all parties have to meet the signature requirements? Sorry. All parties have to meet the signature… Meet the signature requirements every election? No, Your Honor. I think it's fine. The Supreme Court has said it's fine that the state pays for primary elections. At the same time, if the state is paying for primary elections, it cannot impose this antiquated system on the competitors. You still haven't told me what your remedy is. Well, Your Honor, we have spoken in the briefs and in the evidence about electronic petitioning platforms, which are a major improvement because they automatically validate signatures because they're integrated with voter rolls. They also reduce the burden and expense of sending an army of petitioners out across the state to collect signatures. But that's simply one possible outcome. Okay, I think you've had an opportunity to answer my question, and I don't want to take up too much more time. Thank you. Thank you. Thank you, Mr. Hall. Thank you, Mr. Hunter. The case will be taken under advisement.